**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ANGELA WILLIS,                                    Case No. 1:10-cv-594

              Plaintiff,                          Barrett, J.
                                                 Bowman, M.J.
        v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Angela Willis filed this Social Security appeal in order to challenge the
Defendant's determination that she is not disabled.   *See* 42 U.S.C. §405(g).
Proceeding through counsel, Plaintiff presents five claims of error, all of which the
Defendant disputes.   As explained below, I conclude that the ALJ's finding of non-
disability should be REVERSED, because it is not supported by substantial evidence in
the administrative record.

## I. Summary of Administrative Record

Plaintiff filed an application for Disability Insurance Benefits ("DIB") in December
2003 (Tr. 64-66) and again in April 2005 (Tr. 68-70), alleging a disability onset date of
October 2002 based primarily upon mental impairments, although subsequent records
and Plaintiff's testimony also relied upon physical impairments.   (*See, e.g.* Tr. 622,
Plaintiff's appeal dated 9/10/08 alleging she is disabled due to both physical and mental
issues, particularly chronic pain).   Plaintiff was 32 years old on March 31, 2008, the date

she was last insured.  (Tr. 18, 23).  Plaintiff's application was denied initially and upon reconsideration, and she timely requested an evidentiary hearing.  On August 20, 2008, following an administrative hearing held on May 29, 2008 at which Plaintiff appeared with counsel, Administrative Law Judge ("ALJ") Samuel A. Rodner issued a decision concluding that Plaintiff was not disabled.  (Tr. 21, 23).  The Appeals Council denied review; therefore, the ALJ's decision remains as the final decision of the Commissioner.  Plaintiff filed the instant complaint on September 1, 2010 in order to challenge the ALJ's decision.

In specific "Findings" representing the rationale of his decision, the ALJ determined that Plaintiff "has the following severe impairments: bipolar affective disorder, attention deficit hyperactivity disorder, panic disorder not otherwise specified, post traumatic stress disorder, personality disorder not otherwise specified, bilateral chondromalacia of the knees, morbid obesity, status post chondroplasty of the right knee and the left knee."  (Tr. 18).  However, the ALJ determined that none of the impairments or combination thereof met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, such that Plaintiff was entitled to a presumption of disability.  (*Id.* at 20).  Rather, the ALJ determined that Plaintiff retained the following residual functional capacity ("RFC") to perform a limited range of light work, subject to the following non-exertional limitations:

> [S]he was limited to lifting and carrying 30 pounds occasionally and 10 pounds frequently, to standing and walking an hour at a time or 2 ½ hours total during the course of an eight hour day, and to sitting three hours at a time or six hours total during the day.  The claimant could occasionally climb, kneel, and crawl, and could frequently stoop, balance, and crouch.  She had limited ability to push and pull, equal to that for lifting and carrying, and had to avoid environments involving heights, moving machinery, humidity, and vibration.  The claimant was able to perform the

> full range of work mentally except that she had to avoid jobs where she had to interact with others more than occasionally or superficially.  The claimant could receive instructions and understand questions appropriately in a smaller and "non-hectic" setting, which means that she had to avoid a constantly rapid pace.  She could also cope with ordinary and routine changes in a work setting that was not of high demand.  In other words, the claimant was limited to performing simple one and two step job instructions, and routine and repetitive tasks.

(Tr. 21).  Based upon testimony of a vocational expert, the ALJ determined that Plaintiff could perform a significant number of jobs in the national economy.  (Tr. 23).  Therefore, from the date of her alleged onset of disability through the date she was last insured, the ALJ determined that Plaintiff was not under a disability.  (Tr. 24).

In her statement of errors, Plaintiff argues that the ALJ erred when he: 1) gave too much weight to the opinion of a non-examining consultant; 2) failed to include all relevant mental impairments in calculating Plaintiff's residual functional capacity; 3) failed to give controlling weight to the opinion of Plaintiff's treating physician, or to the opinion of an examining consultant; 4) failed to find Plaintiff credible; and 5) failed to provide an adequate hypothetical to the vocational expert.

## II.  Analysis

### A.  Judicial Standard of Review

To be eligible for DIB or SSI benefits, a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the

4

agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v.  Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

Plaintiff argues that the five previously referenced errors led the ALJ to erroneously conclude that she was not disabled.  All of the errors alleged by Plaintiff pertain to her mental impairments rather than to any physical impairments; therefore, this Report and Recommendation ("R&R") focuses exclusively on Plaintiff's mental impairments.

## B.  Specific Errors

## 1.    The Weight Given to the Non-Examining Consultant

The period of time under examination in this case is lengthy - requiring review of nearly six years' worth of medical records for the claimed disability period alone (2002-2008), plus additional records dating prior to Plaintiff's claimed October 31, 2002 disability date.  Of all the records reviewed, the ALJ placed "great weight," indeed, clearly the most weight concerning Plaintiff's mental impairments, upon the opinion of a non-examining consulting psychologist, Patricia Semmelman, Ph.D.  (Tr. 20).  Dr.

Semmelman rendered her opinion on February 20, 2004, exactly four and a half years prior to the Commissioner's decision.

Citing *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 408-409 (6ᵗʰ Cir. 2009), Plaintiff argues that the ALJ erred as a matter of law by failing to acknowledge or discuss the effect of more than four years' worth of records not reviewed by Dr. Semmelman, including more recent records from Plaintiff's treating physicians and examining consultants. *Blakley* is controlling and requires remand in this case. Dr. Semmelman obviously was not privy to a significant number of records from a variety of medical sources who examined and/or treated Plaintiff after February 2004, but the ALJ failed to reference that fact or to adequately discuss his reasons for reliance upon her opinion in assessing Plaintiff's mental RFC.

In general, the opinions of treating physicians are entitled to "controlling" weight, and the opinion of a consulting physician who has examined the plaintiff will be given more weight than that of a non-examining consultant like Dr. Semmelman. *See* 20 C.F.R. §404.1527(d)(1) and (d)(2). Of course, these regulatory presumptions remain subject to individual variations. Thus, in *Blakley* the Sixth Circuit reiterated the principle that "[i]n appropriate circumstances, opinions from State agency medical...consultants...may be entitled to greater weight than the opinions of treating or examining sources." (*Blakley*, 581 F.3d at 409, quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996)). In *Blakley* the appellate court examined the types of circumstances in which it would be "appropriate" for the Commissioner to deviate from the regulatory presumptions. The Sixth Circuit reversed on grounds that in that case, the state non-examining sources did not have the opportunity to review "much of the

over 300 pages of medical treatment...by Blakley's treating sources," and the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consulting physician's opinions.  *Blakley*, 581 F.3d at 409 (*quoting Fisk v. Astrue*, 253 Fed.Appx. 580, 585 (6th Cir. 2007)).  Under *Blakley*, then, an ALJ may choose to credit the opinion of even a non-examining consultant who has failed to review a complete record, but he should articulate his reasons for doing so.  If he fails to provide sufficient reasons, his opinion still may be affirmed if substantial evidence supports the opinion and any error is deemed to be harmless or *de minimis*.

In this case, the ALJ briefly discussed why he was giving little weight to treating physicians, but never directly acknowledged the shortcomings of Dr. Semmelman's records review and failed to reference at all the opinion of at least one medical source.[1] The ALJ dismissed the opinion of another non-examining consultant, who reviewed Plaintiff's records 20 months after Dr. Semmelman, without discussion or explanation, stating only that "more weight" was being given to the opinion of Dr. Semmelman than to the opinion of Dr. Melvin.[2]  (Tr. 20).  At the time of her report, Dr. Semmelman noted that Plaintiff had been diagnosed with bipolar disorder, depression and ADHD.  Dr. Semmelman was able to review records from a nearly two-week psychiatric

---

[1]The ALJ does not reference the opinion of examining consultant James Rosenthal, Psy. D., or the opinion of examining consultant Nancy Schmidtgoessling.  (Tr. 323-326, 241-245).  Regulations require consideration of *all* medical opinions, not merely those of treating physicians.  *See* 20 C.F.R. §1527(d)("Regardless of its source, we will evaluate every medical opinion we receive.").

[2]Dr. Melvin assessed greater limitations in several areas, finding Plaintiff to be "markedly limited" in her ability to understand and remember detailed instructions or to carry out detailed instructions, and "moderately limited" in three areas involving concentration, persistence and pace, including a specific finding that she would have "slowed concentration, persistence and pace."  (Tr. 345-347).

hospitalization in 2003, but her inability to review literally years of subsequent records should at least have been referenced by the ALJ.

As Plaintiff notes, the ALJ recognized additional evidence in the record (mostly post-dating Dr. Semmelman's review) that reflected that in addition to the diagnoses noted by Dr. Semmelman, Plaintiff suffers from a panic disorder,[3] PTSD, and a personality disorder NOS (Tr. 18). It is true that a diagnosis, in and of itself, is not conclusive evidence of disability because it does not reflect the limitations, if any, that it may impose upon an individual. *See Young v. Secretary of Health and Human Services*, 925 F.2d 146, 151 (6th Cir. 1990); *Wallace v. Astrue*, 2009 WL 6093338 at *8 (6th Cir. December 1, 2009). Nevertheless, as discussed more fully below, the possibility that these additional impairments determined by the ALJ would impact Plaintiff's ability to work full-time more severely than determined by Dr. Semmelman favors remand.

### 2. Failure to Determine and Include Relevant Mental Impairments

The ALJ's failure to reference or explain why he was placing so much weight on the opinion of a non-examining consultant who performed her records review so early in the process cannot be excused as harmless error, when viewed in the context of the ALJ's determination of Plaintiff's residual functional capacity. To determine the extent of Plaintiff's mental impairments, the ALJ relied almost exclusively on Dr. Semmelman's analysis, yet failed to incorporate all of the limitations found even by Dr. Semmelman.

---

[3] At the time of her records review, Dr. Semmelman was skeptical of Plaintiff's complaints of panic attacks, since "[t]here are no complaints of panic attacks in any of the treatment notes." (Tr. 365). Therefore, Dr. Semmelman noted no functional limitations concerning panic attacks, even though the ALJ concluded that Plaintiff does suffer from a panic disorder.

Dr. Semmelman found Plaintiff to be moderately limited in her abilities to maintain social functioning, and to maintain concentration, persistence, or pace. (Tr. 359). She determined that Plaintiff also was moderately limited in her abilities to carry out detailed instructions, to maintain attention and concentration for extended periods, and to work in proximity to others without being distracted (Tr. 363). Last, Dr. Semmelman determined that Plaintiff would be moderately limited in her ability to perform at a consistent pace without an unreasonable number and length of rest periods, and in her ability to respond appropriately to changes in the work setting (Tr. 364).

To some extent, the ALJ went beyond Dr. Semmelman's functional limitations by finding Plaintiff to be limited to "jobs where she had to interact with others [no] more than occasionally or superficially." (Tr. 21). The ALJ incorporated limitations found by Dr. Semmelman by finding Plaintiff able to "receive instructions and understand questions appropriately in a smaller and 'non-hectic' setting" meaning that she had to "avoid a constantly rapid pace." (*Id.*). The ALJ also determined that Plaintiff could "cope with ordinary and routine changes in a work setting that was not of high demand." (*Id.*). Last, he found Plaintiff able to follow one and two step instructions with routine and repetitive tasks. (*Id.*).

Other than noting Plaintiff's limited ability to interact with others, the ALJ failed to discuss whether limitations would result from the additional severe mental impairments documented after the date of Dr. Semmelman's review. Plaintiff asserts that her panic attacks alone prevent her from leaving her house to work on a full-time basis. The ALJ referenced the fact that "[t]he claimant's mother confirmed that the claimant does not

9

leave the house," (Tr. 19), but did not discuss whether any limitation would result from Plaintiff's panic disorder. Plaintiff also asserts that her episodes of rage and crying spells (presumably related to her personality disorder) would be problematic in the workforce and should have been included in the ALJ's assessment of Plaintiff's mental RFC. While the ALJ may have determined that Plaintiff's additional severe mental impairments did not translate into additional work-related limitations, it is difficult to find substantial evidence in the absence of discussion of this issue.

All the more problematic is the ALJ's failure to adequately account for Plaintiff's documented difficulties in maintaining attention even for simple tasks. In 2004, Dr. Semmelman found Plaintiff to be "moderately limited" in her abilities to maintain concentration, persistence, or pace, and in her ability to perform at a consistent pace without an unreasonable number of rest periods. Despite the ALJ's reliance on Dr. Semmelman's opinions, he failed either to include any additional limitations pertaining to pace and concentration, or to explain why he chose not to include those limitations. Merely stating that Plaintiff must avoid a "constantly rapid" pace does not address the full extent of Dr. Semmelman's opinions, as well as those of subsequent medical sources, that Plaintiff is at least moderately limited in her abilities to maintain concentration and pace even for simple jobs. The ALJ included no reference to production quotas, and several of the jobs to which the vocational expert testified presumably would include demands of pace or quotas that may prove incompatible with Plaintiff's limitations. (*See* Tr. 24 and 660-663, hand packer, inspector, food preparation worker). As another court put it, "Plaintiff may be unable to meet quotas, stay alert, or

work at a consistent pace, even at a simple, unskilled, routine job." *See Edwards v. Barnhart*. 383 F. Supp.2d 920, 930-931 (E.D. Mich. 2005)(hypothetical limiting claimant to "jobs entailing no more than simple, routine, unskilled work" not adequate to convey moderate limitation in ability to concentrate, persist, and keep pace).

Plaintiff's fifth stated error- that the hypothetical provided to the vocational expert ("VE") failed to include restrictions on maintaining attention or concentration, difficulties with pace and persistence, and difficulties relating to a supervisor or to co-workers -also supports remand. (*See* Doc. 9 at 10). "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *See Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 516 (6th Cir. 2010)(where medical source opinions specifically limited Plaintiff's ability to sustain attention and imposed restrictions in pace, speed and concentration, ALJ's "streamlined" hypothetical omitting those restrictions was insufficient); *accord Ramirez v. Barnhart*, 372 F.3d 546, 552-553 (2d Cir. 2004)(hypothetical limiting claimant to simple, repetitive, one to two step tasks not sufficient to encompass deficiencies in concentration, persistence and pace); *Whack v. Astrue*, 2008 WL 509210 at *8 (E.D. Pa. 2008)(unpublished)(citing cases for the proposition that hypothetical restrictions of "simple" or "low-stress" work are insufficient where claimant has moderate deficiencies in concentration, persistence or pace); *but contrast Smith v. Halter*, 307 F.3d 377 (6th Cir. 2001)(where ALJ relied on testimony that characterized plaintiff's concentration problems as minimal, ALJ's translation of

condition into hypothetical that included restrictions against high quotas, complexity and stress was sufficient).

### 3. Failure to find Plaintiff Credible

Plaintiff asserts that the ALJ erred when he did not find her testimony to be fully credible.  A disability claim can be supported by a claimant's subjective complaints, as long as there is objective medical evidence of the underlying medical condition in the record.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003).   However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476 (citations omitted).   An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  Further, a credibility determination cannot be disturbed "absent a compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004).

In this case, the ALJ determined that Plaintiff "was partially but not fully credible in her testimony."

> She seems to do quite well mentally when she is in treatment for a period of time....It is only when she has failed to go to such treatment that she has developed such additional difficulty as she described at the hearing. In other words, the limiting effect of the claimant's psychological condition

> is directly dependent upon her compliance with such mental health care as she has had available.  Moreover, the claimant has a mediocre earnings record, and no inference can be made on the basis of her employment history that she would be working if she could.  In addition, the claimant's allegations that her knees are worse since the performance of two surgeries are inconsistent with a medical source statement provided by her treating surgeon.... Finally, there is no independent third party who has corroborated the claimant's subjective allegations.

(Tr. 21).

Plaintiff's earnings record is indeed "mediocre" at best.  Aside from her limited work record, Plaintiff's mother stated that Plaintiff had been fired from her last place of employment because she was accused of stealing (Tr. 118).  On October 18, 2004, Plaintiff reported that she was "doing very well" but also that she was "[n]o longer working because she was unable to care for her 10/y/o daughter properly." (Tr. 274).

While the ALJ's credibility determination finds support in other facts of record,[4] the ALJ's suggestion that Plaintiff has been non-compliant with her mental health treatment does not appear to be supported by the record.   Plaintiff's medical records reflect that she has failed to attend counseling treatment only when discharged because she was doing well on medication therapy alone.  (Tr. 269).  Although there were periods of time when Plaintiff sought mental health treatment from her primary care physician rather than from a mental health provider, the same records reflect that decision was made based upon Plaintiff's limited medical insurance coverage.  (Tr.

---

[4]The ALJ also noted inconsistencies between Plaintiff's report of her knees being worse post-surgery and the records of her treating surgeon. In addition, although not specifically noted by the ALJ, Plaintiff's activities of daily living appear to be inconsistent with her reports of disabling pain. (*See* Tr. 110, 113, 130, 267). Finally, Plaintiff's medical records reflect a steady increase in her weight over time, up to the date of her 2008 hearing, when at 5 foot even, she weighed 230 pounds.  Somewhat inexplicably, she testified that she has little or no appetite (See Tr. 647, "I eat maybe one time a day.").

316).  SSR 96-7p requires an adjudicator to consider any reasons offered for a failure to pursue treatment, including mental illness or a lack of insurance.  *See Green v. Comm'r of Social Sec.,* 2008 WL 4449854 at *9 (E.D. Mich., Oct. 2, 2008); *Blakeman v. Astrue*, 509 F.3d 878, 888 (8th Cir. 2007).  Given the other valid reasons to discredit Plaintiff's testimony as well as the great deference afforded to the ALJ on issues of credibility, any error in this respect may have been harmless.  However, because it is unclear as to what extent the error influenced the ALJ's credibility determination and remand is already required on other grounds, the ALJ should re-evaluate the issue of Plaintiff's credibility.

### 4.    Failure to Give Controlling Weight to the Opinions of Dr. Simcoe and Dr. Brengle

In addition to the errors discussed above, Plaintiff argues that the ALJ erred by failing to give controlling weight to the opinion of her treating physician (Dr. Simcoe), and by failing to give adequate weight to the opinion of an examining consultant (Dr. Brengle).

### a.    Treating Physician Dr. Simcoe

Dr. James Simcoe is Plaintiff's long-standing treating physician, having treated Plaintiff for nearly thirty years.  (Tr. 638).  Dr. Simcoe did not complete any assessments of Plaintiff's functional capacity, but wrote in a letter dated December 29, 2005:

> Angela Willis has been diagnosed with bipolar disorder....The patient currently does not have insurance coverage that will cover her psychiatrist so she is being followed by us and her medications are being given by us and watched.  The patient has been doing well on this regimen.  The patient is totally disabled from any type of gainful employment at this time.

(Tr. 316).

On February 28, 2006 Dr. Simcoe wrote again in order to "delineate" his December opinion that Plaintiff was disabled. In his February 2006 letter, Dr. Simcoe explains that Plaintiff "has significant problems with chronic depression and bipolar disorder as well as migraine headaches." He writes that she "is doing better and is improving but I feel that her depression and emotion[al] instability is such that she is not able to work at this time....[H]opefully the patient will be able to work in the future. The main reason for her disability, therefore, is the depression that she suffers from." (Tr. 376). Finally, an office note from Dr. Simcoe dated February 1, 2008 succinctly states that "[t]he patient is not capable of doing any type of work at this time, mostly because of her knee problems." (Tr. 467).

The ultimate question of disability is reserved to the Commissioner. However, 20 C.F.R. § 404.1527(d)(2) provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." *Id.* In addition, in determining the weight to give to *any* medical source opinion, an ALJ must also consider: 1) the examining relationship between the medical source and claimant; 2) the treatment relationship, including the length of treatment, frequency of examination, and nature and extent of relationship; 3) support by medical evidence; 4) consistency of the opinion with the record as a whole; 5) the source's area of specialization; and 6) any other factors which support or contradict the opinion. *Id.*

In this case, the ALJ rejected completely the opinion of Dr. Simcoe that Plaintiff is disabled.

> Dr. Simcoe did not delineate any specific limitations produced by the claimant's medical condition, and the determination of disability is one which is left to the Commissioner of the Social Security Administration. His statements are also contradictory within themselves. For example, on December 29, 2005, Dr. Simcoe stated that the claimant was totally disabled for any type [of] gainful employment. However, he also stated that the claimant's mental conditions were controlled and that she was doing well on her psychotropic medication regimen. On February 1, 2008, Dr. Simcoe stated that the claimant was not capable of doing any type of work, mostly because of her knee problems.... Dr. Simcoe is the claimant's treating primary care physician, and thus is not an orthopedic specialist. As the claimant's treating knee surgeon, Dr. Ahmed is entitled to more weight.

(Tr. 22). In short, the ALJ rejected Dr. Simcoe's opinion as unsupported and inconsistent with other evidence.

"[I]f the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for his rejection." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *see also* 20 C.F.R. § 404.1527(d)(2). An ALJ's failure to provide adequate explanation for according less than controlling weight to a treating source may be excused if the error is harmless or *de minimis*, such as where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." *Blakley,* 581 F.3d at 409 (*quoting Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

Whether the ALJ's rejection of Dr. Simcoe's opinion satisfies the "good reasons" requirement presents a close issue in this case. On the one hand, as the ALJ states,

Dr. Simcoe did not complete any type of functional capacity assessment and several of his clinical notes appear to be inconsistent with his opinion that Plaintiff is disabled. (*See, e.g.* Tr. 477, 11/25/05 note reporting patient as having "done fairly well overall except for her insomnia" and describing her as "emotionally stable at this point."; *see also* Tr. 472, 8/7/06 note reporting that Plaintiff feels "more agitated and more depressed" but that she is "seeing a counselor every other week and is doing well with this"). His physical assessment of Plaintiff's knee impairment also was inconsistent with that of Plaintiff's treating orthopaedist. With respect to Plaintiff's mental impairments, at least some clinical records from other treating sources appear at odds with Dr. Simcoe's disability opinion, although those records were not discussed by the ALJ. (*See, e.g.*, Tr. 267, 269, 275, progress notes from Transitional Living Inc. dating from 2004 and 2005 reporting that Plaintiff is "doing well," and was "stable" with "euthymic" mood).[5]

On the other hand, when viewed both in the specific context of the ALJ's opinion and in the context of the record as a whole, the ALJ's rejection of Dr. Simcoe's opinion begs for further explanation. Although Plaintiff testified that Dr. Simcoe has treated her since she was three years old and the records reflect frequent appointments, the ALJ did not discuss those aspects of the treatment relationship. The discussion and rejection of Dr. Simcoe's opinion follows immediately after the ALJ's discussion and adoption of Dr. Semmelman's opinions, which I have already found to constitute legal error. Rejecting a medical opinion merely because a non-treating consulting physician disagrees is not an adequate basis for rejecting a treating physician's opinion. *Hensley*

---

[5]Of course, not all clinical records are incompatible with Dr. Simcoe's opinion. (*See e.g.*, Tr. 591, 5/28/08 note describing Plaintiff's pain and increased anxiety).

*v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009). Here the ALJ did provide some valid reasons for rejecting Dr. Simcoe's opinion, but his failure to address the opinion of examining consultant Dr. Rosenthal and the clinical records of other medical sources, as well as his failure to explain the basis for crediting Dr. Semmelman over Dr. Melvin, may have led to him to reject Dr. Simcoe's opinion based upon an incomplete analysis of the record as a whole. Therefore, on remand the ALJ should re-assess the weight to be given to the opinion of Dr. Simcoe.

### b. Examining Consultant Dr. Brengle

In contrast to his analysis of the opinion of Plaintiff's treating physician, the ALJ's rejection of the opinion of examining consultant E.D. Brengle, Ph.D reveals no error. Dr. Brengle completed a mental functional capacity assessment wherein he opined that Plaintiff was "markedly limited" in six areas, including the abilities: 1) "to remember locations and work-like procedures;" 2) "to carry out very short and simple instructions," 3) "to make simple work-related decisions," 4) "to ask simple questions or request assistance," 5) "to be aware of normal hazards," and 6) to set realistic goals or make plans independently of others." (Tr. 594). Besides these marked restrictions, Dr. Brengle assessed Plaintiff as "extremely limited" in fourteen additional work-related abilities, including in abilities relating to understanding and memory, sustained concentration and persistence, social interaction, and adaption. (*Id.*).

In the narrative portion of his assessment, Dr. Brengle explained:

The client experiences frequent episodes of agitation and panic. She cries and is overwhelmed. She is frequently unable to function due to feeling overwhelmed and helpless. She feels she must leave situations and isolate herself from people. She is afraid to leave her house due to

> panic attacks and fear of getting lost.  She also has episodes of rage where she may be out of control and assaultive to others.  Her thoughts frequently race and she is unable to concentrate or remember what she is doing.  She has little capacity to deal with stress.  Sudden change is likely to produce feellings [sic] of being overwelmed [sic], panic, emotional outbursts, and disorganized ineffective behavior.

(Tr. 595).

The ALJ declined to give "any significant weight" to the opinion of Dr. Brengle partly based on the brevity of Dr. Brengle's relationship with Plaintiff, as a one-time examiner. The ALJ also found Dr. Brengle's assessment to be contradicted by the record as a whole.  "While it is true that the claimant certainly has her ups and downs, the medical evidence of record shows that she has usually done well under the treatment of a psychiatrist....(Tr. 22-23).   Finally, the ALJ found Dr. Brengle's severe limitations to be "inconsistent with the treatment notes that [immediately] preceded" his June 2008 opinion, including notes dated April 6 and April 21, 2008.  (*Id.*).

After noting evidence that Plaintiff's health appeared to be improving at about the same time as Dr. Brengle's assessment, the ALJ concluded:

> Given all the above, the assessment and evaluation provided by Dr. Brengle...are considered to be "bolts from the blue" that [do] not constitute substantial evidence that the claimant is likely to be disabled for a continuous period of at least 12 months.    The same is true of an evaluation provided by Dr. Dabar on August 4, 2008.... [and of] a statement provided by a treatment specialist, Felicia Ybarra Reynolds, on May 28, 2008...."

(Tr. 23).[6]

---

[6] Plaintiff is highly critical of the ALJ's use of the phrase "bolts from the blue," suggesting that the ALJ lifted the phrase from a publication of the San Diego Chargers.  I find no intentional reference to the professional football team, and conclude only that the ALJ borrowed an idiomatic phrase in use at least since 1837. *See* www.phrases.org.uk/meanings, citing Thomas Carlyle, *The French Revolution: A History*.

Because the opinion of a consultant was not entitled to controlling weight and the ALJ provided ample reasons for rejecting it, this Court finds no error in the rejection of Dr. Brengle's opinion.[7]   This is not to say that the ALJ must reach the same conclusion concerning Dr. Brengle's opinions on remand, but only that there is no legal error on the record presented.

### III.  Conclusion and Recommendation

Plaintiff advocates for outright reversal and an award of benefits, but moves in the alternative for remand.  I conclude that remand will provide appropriate relief on the record presented.

A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary.  *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted).  In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175.

---

[7]Plaintiff does not specifically challenge the ALJ's assessment of the records of Dr. Dabar and Felicia Reynolds.  Although it is not clear that Ms. Reynolds would be qualified as a treating source, unless she is a physician or psychologist, her opinion as a treating non-qualified source may still be entitled to some weight.  To the extent that Dr. Dabar is a treating source, any of his opinions would be entitled to controlling weight.  Their records presumably can be re-considered on remand to the extent required to remedy the other errors noted in this record.

For the reasons explained herein, **IT IS RECOMMENDED THAT**:

1.    The decision of the Commissioner to deny Plaintiff DIB benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g);

2.    On remand, the ALJ should carefully reconsider evidence of Plaintiff's mental impairments, including all relevant opinions from both acceptable treating sources and other medical sources, as more particularly instructed herein;

3.    As no further matters remain pending for the Court's review, this case be **CLOSED.**


_/s Stephanie K. Bowman_____
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

ANGELA WILLIS,                                        Case No. 1:10-cv-594

        Plaintiff,                              Barrett, J.
                                                     Bowman, M.J.

    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.   Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).